FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

99 FEB 24  PM 3: 44

U.S. DISTRICT COURT
N.D. OF ALABAMA

CAROLYN BYRAM,

     PLAINTIFF,

v.                              CASE NO. CV-97-J-435-NW

MUSCLE SHOALS BOARD
OF EDUCATION, SAM BREWER,

     DEFENDANTS.

SAM BREWER,

     THIRD-PARTY PLAINTIFF

**ENTERED**

**FEB 24 1999**

v.

MUSCLE SHOALS BOARD
OF EDUCATION,

     CROSS-DEFENDANTS,
and
JIM DOUGLAS, et al.,

     THIRD-PARTY DEFENDANTS.

consolidated

FELICIA CLINGAN,

     PLAINTIFF,

v.                              CASE NO. CV-97-J-436-NW

MUSCLE SHOALS BOARD
OF EDUCATION, SAM BREWER,

     DEFENDANTS.

SAM BREWER,

     THIRD-PARTY PLAINTIFF

v.

MUSCLE SHOALS BOARD
OF EDUCATION,

     CROSS-DEFENDANTS,
and
JIM DOUGLAS, et al.,
     THIRD-PARTY DEFENDANTS.

131

## MEMORANDUM OPINION

Pending before the court is the defendant Muscle Shoals School Board's (the "Board") motion for summary judgment on all claims of plaintiffs (doc.57); the defendant Brewer's motion for summary judgment against the plaintiffs' claims (doc. 60); plaintiffs' motion for partial summary judgment against the defendant Board for quid pro quo sexual harassment (doc. 61); the defendant Board and third party defendant's motion for summary judgment against the cross claims and third party claims of defendant Brewer (doc. 64); defendant Board and third-party defendants' motion to strike evidentiary submission in opposition to motion for summary judgment (doc. 92); and Byram and Clingan's motion to reconsider the court's denial of motion for leave to amend the complaint (doc. 129).

The court has reviewed all of these documents as well as the evidentiary submissions in support of said motions.

### I. Procedural History

The plaintiffs commenced suit by filing a complaint on February 21, 1997 alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991; the Equal Protection clause of the Fourteenth Amendment to the United States Constitution; and 42 U.S.C. § 1983.[1]  At the time the complaint was filed, the plaintiffs Charges of Discrimination were still pending in front of the EEOC, thus the

---

[1]The plaintiffs each filed a separate suit with nearly identical allegations which were consolidated by court order of May 29, 1997 (doc. 23).  The court shall refer to both of these suits in the singular for ease of discussion.

2

plaintiffs had not yet obtained a Notice of Right to Sue.   Plaintiffs referenced this in a footnote and stated that the plaintiffs "assert only a §1983 claim predicated on Title VII .... When the EEOC issues such notice, plaintiff[s] will amend [their] complaint to include [their] Title VII claim." Complaint at fn.1.

Defendant Samuel Brewer filed a Counter, Cross and Third-Party Complaint on April 29, 1997 (doc.11), in which he alleged claims for due process violations; intentional discrimination - equal protection; intentional discrimination - 42 U.S.C. § 1983; defamation and libel; and tortious interference with contract.  By order dated September 29, 1998, the court granted plaintiffs' motion to dismiss defendant Brewer's § 1981 counterclaim against plaintiffs and his due process and equal protection claims against plaintiffs.  The court also granted summary judgment in favor of plaintiffs on defendant Brewers defamation and tortious interference claims (doc. 114).   Thus, no claims by defendant Brewer remain pending against the plaintiffs.  The court also dismissed defendant Brewer's due process claim brought pursuant to 42 U.S.C. §1983 claims against the Board and the third-party defendants.

The court finds from a consideration of all of the facts of this case that even if the court was to grant the plaintiffs' pending motion to reconsider the court's denial of motion for leave to amend the complaint (doc. 129), allowing the amendment will not change the underlying substance of this ruling.  Under 42 U.S.C. §2000e-5, the plaintiffs had ninety days from the date of receipt of their right-to-sue letters by the Equal Employment

3

Opportunity Commission to amend their complaint to allege this as a cause of action. The right to sue letter was issued on August 11, 1997. The plaintiffs filed their motion to amend the complaint on February 23, 1998. This is more than six months after they received their right to sue notice and more than three months after their deadline had run. Briefs filed in early February of 1998 by the defendants pointed out to the court and apparently the plaintiffs that no Title VII claim was ever made part of the complaint.

Showing even further neglect, this court originally denied the plaintiffs' motion to amend by Order dated December 18, 1998. Plaintiffs filed their motion to reconsider, claiming this court abused its discretion, on February 1, 1999, six weeks after the initial denial.[2] This court finds that the ninety day period for filing a Title VII action is "not jurisdictional but is akin to a statute of limitations." *Bryant v. U.S. Dept. of Agriculture*, 967 F.2d 501(1992), citing *Irwin v. Veterans Administration*, 498 U.S. 89, 111 S.Ct. 453, 459, 112 L.Ed.2d 435 (1990). In their motion to reconsider, the plaintiffs state that under *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222(1962), this court must consider certain factors as to whether the failure of plaintiffs to amend their complaint in a timely fashion should be excused. These include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

---

[2] Although plaintiffs claim in their motion to reconsider that "they made clear in the very first paragraph that this action was being brought pursuant to Title VII", this court notes that they could not sue under Title VII at that time because they had not yet received their right to sue notice.

4

party, and futility of the amendment. This court finds that such amendment would be futile as this court can find no basis in the facts to allow this case to proceed to a jury on the plaintiffs' claims against the school board under Title VII.

This court finds that even if this court allowed the amendment, the plaintiffs claims against the Board are due to be dismissed. Although this court is of the opinion that the motion to amend is due to be denied, this court has addressed the contentions in this opinion.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a

5

genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson ,* 477 U.S. at 248. All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987).

6

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding Corp.*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

In the case now pending before this court, the moving parties can meet their burdens of proof by establishing an absence of evidence in the record which supports the nonmoving parties claims. *See Fitzpatrick*, 2 F.3d at 1115-1116.[3]

### III. Factual Background

In the light most favorable to the non-moving party, the court draws the following facts from the record currently before the court:   Both plaintiffs worked as secretaries for the principal of Webster Elementary School, Samuel Brewer. (Transcript from school board hearing (hereinafter "board hearing") at 26.)   Webster Elementary is part of the Muscle Shoals School system. Plaintiff Byram began her employment there in August of 1990.

---

[3]In the plaintiffs' response to the motion for summary judgment on behalf of the Muscle Shoals Board of Education, the plaintiffs cite no law at all in support of their response. While plaintiffs allege that they need only show "substantial evidence that Brewer's conduct involved either promises or threats related to the plaintiffs' jobs" (response of plaintiffs at 2-3), plaintiffs do not state on what basis they believe this is all they need to show, nor, assuming such a showing was made, what burden of proof this would satisfy.

(Depo. of Byram at 61; board hearing at 257.) Plaintiff Clingan replaced Byram for Byram's leave of absence during the 1995-1996 school year. (Board hearing at 170, Clingan depo. at 31-32.) Additionally, Clingan had previously been a substitute teacher for the school system and had substituted at Webster Elementary School. (Depo. of Clingan at 25-27.) She also worked as a substitute in the office at Webster. (Clingan depo. at 28-30.)

Each plaintiff alleges that during her employment, defendant Brewer, the principal of Webster Elementary, made inappropriate comments which escalated into inappropriate contact and unwanted sexual exposure and advances. (Depo. of Byram at 95-98, 99-101, 109-115, 170-176, 188, 193-199; depo. of Clingan at 54-57, 78-90, 94-96; board hearing at 175, 182, 188, 192, 231, 235, 262, 265-266, 276.) Both women testified at deposition and at the school board hearing that these instances happened so frequently they could not guess at the number of occurrences, nor give specific dates. (Depo. of Byram at 105-107, 132-134, 142-143, 170-172, 188-189; depo. of Clingan at 69, 71, 102, 112-113; board hearing at 194, 200, 278.)

Neither of the plaintiffs reported the alleged conduct of Brewer to any of their superiors. (Depo. of Byram at 177; board hearing at 205-206.) Both plaintiffs testified at the school board hearing that neither wanted to see Brewer fired from his position as principal and that they were not "out to get him". (School board hearing at 206, 242, 253, 300). Byram finally reported the alleged behavior to the school superintendent, Dr. Douglas. She had gone to speak with Dr. Douglas about a medical leave of absence on June 10, 1996.

8

(Depo. of Byram at 177; depo. of Douglas at 113; board hearing at 25.) Because she did not want someone else to be subjected to the alleged conduct, Byram stated to Dr. Douglas that if the next secretary told him that Brewer was acting inappropriately, the superintendent should believe that person (Depo. of Byram at 223 board hearing at 27.) Plaintiff Clingan had tendered her resignation approximately one month before this time.[4] (Board hearing at 37, depo. of Clingan at 187.)

Upon listening to Byram's allegations, Dr. Douglas, as superintendent, immediately began an investigation, which culminated in a hearing by the school board to determine whether Brewer's contract should be ended.[5] (Board hearing at 42-44; depo. of Douglas at 115-119.) As of June 10, 1996 and up until the date of the hearing, Brewer was suspended with pay. (Board hearing at 15, 41, depo. of Douglas at 242.) As part of his investigation, Dr. Douglas spoke to teachers, another secretary and one or two parents. (Depo. of Douglas at 211-216.)

As a result of his investigation, on June 21, 1996, Dr. Douglas recommended to the board that a hearing be held to consider canceling Brewer's employment contract based on immorality and just cause. (Depo. of Douglas at 246). After a full hearing, the school board

---

[4]Clingan testified that she quit because she could not endure another year of Brewer's behavior and that she knew no other teaching positions would be available in the upcoming school year. (Board hearing at 194, 247.)

[5]Dr. James B. Douglas became the school superintendent in May 1994. Brewer was already principal of Webster at that time, having been placed there by court order in 1986. (Board hearing at 23, 24, 339.)

9

did terminate Brewer's contract as principal of Webster Elementary School. However, Brewer has consistently denied all of the allegations of sexual harassment and misconduct made against him. (Board hearing at 52-53, 350, 352, 357, 358, 360.)

According to Byram, she was never promised anything if she would acquiesce to Brewer's requests. (Depo. of Byram at 261.) She stated that Brewer was a good boss when she first began working at the elementary school (Board hearing at 258.) She also testified that she needed her job and did not want to jeopardize it by reporting Brewer. (Board hearing at 122, 260, 267, depo. of Byram at 322-324). Dr. Douglas testified that Byram said she did not report Brewer's conduct because she needed the job and that Brewer was a good boss. (Depo. of Douglas at 185.)

Plaintiff Clingan believed that reporting Brewer's alleged conduct would hurt her chances of getting a teaching job within Muscle Shoals School system, for which she had applied and was qualified. (Clingan depo. at 16-17; Board hearing at 121, 165.) She also testified that she needed the income the position provided. (Board hearing at 198.) Clingan testified that Brewer had said he would help her get a teaching position; that he had the power to recommend; and that his recommendations were usually followed. (Board hearing at 174, 220, 225-226.) Brewer did recommend Clingan for a position as a first grade teacher. (Board hearing at 66-67.) However, Dr. Douglas thought another applicant was better qualified and that applicant was subsequently hired for the position. Brief in support of motion for summary judgment on plaintiffs' claims against Muscle Shoals Board of

10

Education (hereinafter "brief of board") at 13. Clingan testified that after she quit the secretarial position, she wanted only to get away from the situation and "let it go". (School board hearing at 227 see also Clingan depo. at 125, 133, 247, 251.)

While the school board had a sexual harassment policy, the superintendent testified that he did not believe it applied here, as neither of the plaintiffs ever filed "official" complaints. (Board hearing at 105, 111.) Byram testified that she had probably seen a copy of this policy and had no reason to believe it did not apply to her. (Byram at 315, 327.) Clingan testified that she was told by Brewer that the policies in the school handbooks did not apply to her. (Depo. of Clingan at 34.) However, she also testified that she did not know if having read the policy, she would have changed her decision not to report Brewer's conduct. (Depo. of Clingan at 278-280.) The Board states that a sexual harassment workshop, including a video, was given to teachers and support staff before Dr. Douglas became superintendent in 1994. Brief of board at 13. Both Byram and Brewer signed stating they had seen the video. (Depo. of Douglas at 67.) The Board states that the policy was adopted in 1993. Brief of Board at 14.

In the Board's motion for summary judgment, it states that while a school principal; screens applicants for hiring and makes recommendations, the superintendent or the assistant superintendent interviews the individual. If the superintendent agrees with the principal's recommendation, that person will then be recommended to the full school board. All

11

personnel, both teaching and support staff, are hired by the board. Brief of board at 12. The principal has no authority to hire or fire on his own. *Id*.

## IV. The Plaintiffs' Motion for Summary Judgment and The Board's Motion for Summary Judgment on Plaintiffs' Title VII Claims

The recent case of *Burlington Industries v. Ellerth*, 524 U.S.742, 118 S.Ct. 2257, 2260 (1998), presents facts very similar to those currently before this court. There, the plaintiff quit her job for other reasons, then sent a letter explaining that she quit due to ongoing sexual harassment. While employed, she did not inform anyone in authority about the behavior, despite knowing the employer had a policy against sexual harassment. Like here, there the plaintiff alleged harassment by her immediate supervisor. The District Court granted summary judgment to the employer on the Title VII claims because, while the supervisor's conduct was severe and pervasive enough to create a hostile work environment, the court found that the employer neither knew nor should have known about the conduct. 118 S.Ct. at 2263. The Court of Appeals reversed, holding that the claim could be one of quid pro quo harassment.

The Supreme Court stated that this set of facts, almost identical to those facing this court, present a trier of facts numerous threats to retaliate against the plaintiffs if they denied some sexual liberties, however, the threats were never carried out or fulfilled. 118 S.Ct. at 2264. The Court goes on to state that "quid pro quo" and "hostile work environment" do not appear in the statutory text of Title VII. *Id*. However, the Court adopted those terms in

12

*Meritor Savings Bank. FSB v. Vinson*, 477 U.S. 57, 106, S.Ct. 2399, 91 L.Ed.2d 49 (1986) and distinguished between them, finding them both cognizable under Title VII.[6] *Id.* "The standard of employer responsibility turned on which type of harassment occurred. If the plaintiff established a quid pro quo claim, the courts of Appeals held, the employer was subject to vicarious liability. The rule encouraged Title VII plaintiffs to state their claims as quid pro quo claims, which in turn put expansive pressure on the definition ... the real issue of concern to the parties is whether [the employer] has vicarious liability for [the supervisor's] alleged misconduct, rather than liability limited to its own negligence."[7] *Id.*

Examining this in the light most favorable to the plaintiffs, no tangible employment action resulted from the plaintiffs' refusals to submit to Brewer's requests. Because the plaintiffs' claims involve "only unfulfilled threats, [they] should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct. *Id* at 2265, citing *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1002-1003, 140 L.Ed.2d 201 (1998); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

---

[6] A quid pro quo case is one where threats are actually carried out. A hostile work environment case results from bothersome attentions or sexual remarks that are sufficiently severe. *See Burlington Industries*, 118 S.Ct. at 2264.

[7] As phrased so well in the petition for certiorari in that case, the question presented is "Whether a claim of quid pro quo sexual harassment may be stated under Title VII .... where the plaintiff employee has neither submitted to the sexual advances of the alleged harasser nor suffered any tangible effects on the compensation, terms, conditions or privileges of employment as a consequence of a refusal to submit to those advances?" *Burlington Industries,* 118 S.Ct. at 2265.

The Court in *Burlington Industries* then states, "We must decide, then, whether an employer has vicarious liability when a supervisor creates a hostile work environment by making explicit threats to alter a subordinates terms or conditions of employment, based on sex, but does not fulfill the threat...." 118 S.Ct. at 2266.

> An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment. Sexual harassment under Title VII presupposes intentional conduct.... The law now imposes liability where the employee's purpose, however, misguided, is wholly or in part to further the master's business.

*Burlington Industries*, 118 S.Ct. at 2266 ; citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 70, p. 505 (5th ed.1984). The court goes on to hold that in applying employment principles to intentional torts, "it is less likely that a willful tort will properly be held to be in the course of employment and that the liability of the master for such torts will naturally be more limited (citations omitted)." *Burlington Industries*, 118 S.Ct at 2266. "A supervisor acting out of gender-based animus or a desire to fulfill sexual urges may not be actuated by a purpose to serve the employer (citations omitted)." *Id*. "The general rule is that sexual harassment by a supervisor is not within the scope of employment." *Id* at 2267.

After an extremely thorough analysis of agency liability, the Court eventually reaches the holding that "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a

14

defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Id* at 2270. *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2293, 141 L.Ed. 2d 662 (1998).[8] The court finds this analysis similar to that used by this circuit previously:

> The Eleventh Circuit has held that," where ... the [title VII sexual harassment] plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor or co-worker," the employer is liable under principles of respondeat superior. To establish respondeat superior liability, the plaintiff must show that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action." Plaintiff can demonstrate the employer's actual or constructive knowledge "by showing that she complained to higher management of the harassment, or by showing the pervasiveness of the harassment..."(citations omitted).

*Cabaniss v. Coosa Valley Medical Center*, 1995 WL 241937 (N.D.Ala.1995), citing *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982).

---

[8]*Faragher* also states that plaintiff has a duty to minimize her damages, or exposure to harm. It states, "An employer may ... have provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense, If the plaintiff unreasonably failed to avail herself of the employer's preventative or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care..." *Faragher*, 118 S.Ct. at 2292.

15

In the facts before this court, no evidence has been presented that the Board knew or should have known about Brewer's alleged advances to plaintiffs.[9] Both plaintiffs repeatedly stated that they did not make any complaints about it, and in fact, state that they never discussed any details between themselves. Unlike the facts in *Faragher*, here the plaintiffs were not isolated, as evidenced by Byram having an appointment with Douglas about a wholly different matter and by the evidence that Douglas himself often went to the office at Webster, especially when Brewer was out of town (Depo. of Douglas at 90-91). As such, no basis to impose any liability on the Muscle Shoals School Board, as the employer of Brewer exists under Title VII.[10] Additionally, upon learning of Brewer's alleged behavior, the superintendent immediately suspended him, which culminated in his termination for just cause.

---

[9]Although the record is replete with examples of the plaintiffs' testimony that they never reported defendant Brewer's alleged actions, one such example is in the plaintiffs' memorandum in support of their motion for partial summary judgment (doc. 61), in which the plaintiffs state "Byram initially complained of Brewer's conduct to the Superintendent of the Muscle Shoals Board of Education, James B. Douglas, on or about June 10, 1996. Douglas placed Brewer on administrative leave with pay June 10, 1996. *See* memorandum in support at 9.

[10]The court is aware that currently, although the plaintiffs' claims Title VII violations in their complaint, they were barred from bringing them at that time as the EEOC had not yet issued a Notice of Right to Sue. Once the same was issued, the plaintiffs failed to plead the same within the statutory time limits for doing so. Therefore, this court denied plaintiffs' motion to amend the complaint on this basis. However, this court explicitly finds that as far as liability against the Board, even if the plaintiffs are allowed to amend their complaint to allege a Title VII claim against the school board, the board has no liability thereunder.

In consideration of the foregoing, the plaintiffs' motion for summary judgment against the Muscle Shoals School Board for quid pro quo sexual harassment (doc. 61) be and hereby is **DENIED**.

While the plaintiffs have not timely amended their complaint to include a claim for Title VII, this court has a motion to reconsider its denial of the plaintiffs' motion to amend to include such a claim currently pending before it (doc. 129). This court, for purposes of the defendant Board's motion for summary judgment, finds that even if that motion to amend was granted and the plaintiffs had properly brought a Title VII claim before this court, that premised on the same reasons stated above, the Board's motion for summary judgment on the plaintiffs' claims, if any, under Title VII would necessarily be granted. It is therefore **ORDERED** by the court that the Board's motion for summary judgment on plaintiffs' Title VII claims (doc. 57) be and hereby is **GRANTED.**

## B. Board's Motion for Summary Judgment on Plaintiffs Non-Title VII Claims

Plaintiffs, however, also alleged a claim for 42 U.S.C. §1983 against the defendant Board and against defendant Brewer. However, in response to defendant Board's motion for summary judgment on this very issue, the plaintiffs state only that they "do not address the Board's § 1983 arguments" apparently because they had filed a Motion to Amend the complaint to add their Title VII claim. Response of plaintiffs to motion for summary judgment on behalf of the Muscle Shoals Board of Education, at 5.

17

The school board states that as a municipal entity, it may only be held liable for the execution of a governmental policy or custom. Brief of Board at 23. This statement of law is correct. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir.1997). In *Monell v. New York City Dept. of Social Services*, 436, U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the Supreme Court stated that a municipality can only be liable under section 1983 where the municipality itself causes the constitutional violation at issue. Respondeat superior will not attach under section 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 384 109 S.Ct. 1197, 1203 (1988).

To impose section 1983 liability on the Board, the plaintiffs must show that the Board had policies that were so well settled as to constitute a custom impliedly authorized by policy makers. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). As stated another way, the plaintiffs must establish a widespread practice that "although not authorized by written law or express municipal authority, is so permanent and well settled as to constitute a custom or usage with the force of law. *St. Louis v. Propatnik*, 485 U.S. at 112, 127, 108 S.Ct. 915, 298, 99 L.Ed.2d 107 (1988); quoting *Adickes*, 398 U.S. at 167-168. *See also Depew v. City of St. Marys*, 787 F.2d 1496 (11th Cir.1986); *Jones v. City of Chicago*, 787 F.2d 200 (7th Cir.1986). Plaintiffs have not met this burden. The plaintiffs have wholly failed to show any policy or custom of the Board which allowed, or which even failed to prohibit this type of behavior. The only evidence before this court is that from the

18

superintendent, that the Board had never had this situation arise before this. (Depo. of Douglas at 77, 87, 88.)

Furthermore, although plaintiffs insist in their response to defendant Board's motion for summary judgment that defendant Brewer did threaten plaintiffs if they did not acquiesce to his demands for sexual favors, their deposition testimony demonstrates that Brewer never acted on any alleged threats. (Depo. of Byram at 261-264, 278 (stating that Brewer completed her personnel evaluations fairly), 348 (stating that she has never been disciplined); depo. of Clingan at 215, 238-239, 270, 321; board hearing at 64 (Douglas stating that Brewer never complained about plaintiffs work.))

Assuming plaintiffs had established a policy or custom, plaintiffs then must show that the board had actual or constructive knowledge of the practice and that such had become customary among employees. *Brown v. City of Fort Lauderdale*, 923 F.2d at 1479. Again, the only evidence is that the board had never faced this problem before and that the plaintiffs never mentioned their allegations to the superintendent or the Board before June 10, 1996. (Board hearing at 27-31, 95, 111; depo. of Byram at 344-345.)

Furthermore, the court finds that no respondeat superior liability may attach against the Board in a claim under 42 U.S.C. § 1983. "Municipalities may only be liable for the execution of a governmental policy or custom. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978). *See also Brown v. City of Fort Lauderdale*, 923 F.2d at 1479 ("Recovery from a municipality is limited to acts that are ... acts which the

19

municipality has officially sanctioned or ordered"), quoting *Pembaur v. Cincinnati* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298 (1986); *see also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990) (liability must be based on something more than a theory of respondeat superior).

Plaintiffs have produced no evidence that the City of Muscle Shoals Board of Education has any policy or custom which constituted a deliberate indifference to the plaintiffs' constitutional rights. *See Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298; *Brown v. City of Fort Lauderdale*, 923 F.2d at 1479, citing *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989). Plaintiffs wholly failed to support this claim in their response to the defendant Board's motion for summary judgment. Thus, this court has nothing more than plaintiffs' mere allegations on this claim. The plaintiffs have not met their burden "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). The plaintiffs have not demonstrated that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

In consideration of the foregoing, the court is unable to find any genuine issue of material fact regarding this count of plaintiffs' complaint. The court therefore **ORDERS** that the defendant Board's motion for summary judgment on the plaintiffs' 42 U.S.C. § 1983 claim (doc. 57) be and hereby is **GRANTED**.

Plaintiffs also plead the state law claim of intentional infliction of emotional distress against the school board in their complaint. To substantiate this claim, plaintiffs must show that the Board's conduct was intentional or reckless, extreme or outrageous and caused emotional distress so severe that no reasonable person could be expected to endure it. *Habich v. Crown Central*, 642 So.2d 699, 701 (Ala.1994). Plaintiffs have elicited no evidence that the Board engaged in conduct which meets these elements. Plaintiffs wholly failed to address this count of their complaint in their response to the Board's motion for summary judgment.

Furthermore, plaintiffs have not established any facts which would support this court finding that the Board authorized or ratified the acts of Brewer after it learned of Brewer's actions. *See Mardis v. Robbins Tire & Rubber Company*, 669 So.2d 885, 888 (Ala.1995), citing *Potts v. BE & K Constr. Co*., 604 So.2d 398, 400 (Ala.1992).

In consideration of the foregoing, the court is unable to find any genuine issue of material fact regarding this count of plaintiffs' complaint. The court therefore **ORDERS** that the defendant Board's motion for summary judgment on the plaintiffs' claim for intentional infliction of emotional distress (doc. 57) be and hereby is **GRANTED**.

Plaintiffs also allege in their complaint counts for invasion of privacy and assault and battery against the board. To meet their burden, the plaintiffs must show that Brewer's wrongful acts were committed in the line and scope of his employment; or that the acts were committed in furtherance of the business of the employer; or that the employer participated

21

in or ratified the wrongful acts. *Mardis,* 669 So.2d at 888. Plaintiffs have not shown that any of these alternative theories of liability apply here. Brewer's actions clearly were not within the line and scope of his employment, he furthered no goal of education by this alleged conduct, and the Board clearly did not ratify his conduct, but instead immediately removed Brewer from the workplace so that no further wrongful conduct could occur. *See Id.*

Therefore, the Court **GRANTS** this defendant's motion for summary judgment (doc. 57) on these counts of the complaint as well. No claims against the Board remaining, it is further **ORDERED, ADJUDGED** and **DECREED** by the court that **JUDGMENT** be and hereby is granted in favor of the Board and against the plaintiffs on all counts of the plaintiffs' complaint.[11]

## C. Defendant Brewer's Motion for Summary Judgment Against Plaintiffs

Also pending before the court is defendant Brewer's motion for summary judgment (doc. 60). In it, defendant Brewer claims that he is entitled to judgment in his favor as against the claims of the plaintiffs. This court finds that the defendant denies all incidents of sexual harassment ever occurred. (*See e.g.* board hearing at 350-360). Of course, plaintiffs strenuously disagree.

Assuming that this court allowed the plaintiffs to amend their complaint to assert their Title VII claim, this court has already found, *supra*, that no liability against the Board exists.

---

[11]The court notes that the Board shall remain a party to this suit however, as the defendant Brewer has cross-claims pending against the defendant Board. The court addresses these claims below.

22

As such, unless individual liability attaches to defendant Brewer, the court must grant defendant Brewer's motion for summary judgment on this count of the complaint.[12]   In *Cabaniss v. Coosa Valley Medical Center*, 1995 WL 241937, Judge Propst thoroughly reviewed and analyzed the law of this Circuit on individual liability under Title VII.  That opinion states that "while Eleventh Circuit authority might arguably be conflicting, the controlling authority appears to be that "agent" employees of employers, who are subject to liability cannot be held individually liable under Title VII. *Cabaniss,* 1995 WL 241937, citing to *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir.1991).  The Court in *Busby* stated that "individual capacity suits under Title VII are similarly inappropriate.  The relief granted under Title VII is against the employer, not the individual employees whose actions would constitute a violation of the Act." 931 F.2d at 772.

In consideration of the prevailing law of this circuit, and assuming arguendo that plaintiffs are allowed to amend their complaint to plead Title VII violations, the law is clear that this action cannot lie against defendant Brewer in his individual capacity. As such, this court hereby **ORDERS** that the plaintiffs' Title VII claims be and hereby are **DISMISSED**.

To assert a claim under 42 U.S.C. § 1983, the plaintiffs must demonstrate that they were deprived of a constitutional right by a person acting under color of state law. *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 478 (9th Cir.1991).  The Supreme Court has stated that a defendant in a § 1983 case acts under color of state law when he abuses the

---

[12]See memorandum brief in support of motion for summary judgment of Brewer, at fn.1.

position given to him by the state. *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). As in *Dang Vang*, the court here finds that defendant Brewer came into contact with the plaintiffs and used his position to "deprive these women of their constitutional right to be free from sexual assault. The Supreme Court said in *Lugar v. Edmundson Oil Co., Inc.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) that 'misuse of power, possessed by virtue of state law and possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of state law.'" *Dang Vang,* 944 F.2d at 479. However, the acts of the state employee must also be under the pretense of some state law. *Id.*, citing *Screws v. United States*, 325 U.S.91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). The Court later stated that the dispositive issue is "whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

> Actions taken under color of state law must be related to the state authority conferred on the actor, even though the actions are not actually permitted by the authority. Here, however, the abusive conduct was not in any way related to the duties and powers incidental to the job of ... [principal]. ... For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned to the defendant.

*Dang Vang*, 944 F.2d at 480. Here, the court finds that each incident alleged by the plaintiffs resulted from the plaintiffs' contact with defendant Brewer because of the position he held in the school system. The plaintiffs both describe numerous instances where they were

24

acting at his behest, such as filing papers in his office or answering his phone, at the time the conduct in question occurred. As such, this court finds, under the logic in *Dang Vang,* that a jury here could find that defendant Brewer acted in abuse of his position and under color of state law. *See Dang Vang*, 944 F.2d at 480.

In consideration of the above, the Court is of the opinion that the defendant Brewer's motion for summary judgment on all counts of the plaintiffs' complaint except for Title VII is due to be denied and therefore **DENIES** the same.

The court finds that as to the remaining claims in plaintiffs' complaint, defendant Brewer is unable to show that there are no genuine issue as to any material fact such that he is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322. Plaintiffs are entitled to proceed against this defendant on their 42 U.S.C. § 1983 and state law claims. For this reason, it is therefore **ORDERED** by the court that balance of defendant Brewer's motion for summary judgment be and hereby is **DENIED**.

## D. The Board's Motion for Summary Judgment Against the Claims of Brewer

Defendant Brewer filed a cross-claim against the defendant Board and against third-parties school board members that he was discharged from his employment due to his race and not due to the claims of sexual harassment brought against him. The court having considered everything filed in support of and in opposition to this motion, the court finds that this motion is due to be denied. It is therefore **ORDERED** by the court that this motion be and hereby is **DENIED**.

### V. Other Pending Motions

Also pending before this court are the plaintiffs' motion to reconsider the court's denial of motion for leave to amend the complaint (doc. 129)and defendant Board and third-party defendants' motion to strike portions of Brewer's evidentiary submission in opposition to summary judgment (doc. 92).

The court finds from a consideration of the above that even if the court was to grant the plaintiffs' pending motion to reconsider the court's denial of motion for leave to amend the complaint (doc. 129), allowing the amendment will not change the underlying substance of this ruling. In consideration of all of the above, the court is of the opinion said motion to reconsider (doc. 129) is due to be denied and therefore **ORDERS** the same **DENIED**.

The court is of the opinion that the defendant Board and third-party defendants' motion to strike (doc. 92) is due to be granted in part and denied in part. The court finds that Exhibit 14 is due to be stricken and therefore **STRIKES** the same. The court finds that the remainder of the motion is due to be denied and therefore **DENIES** the remainder of this motion.

**DONE** and **ORDERED** this the _24_ day of February, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

26